W. S. HILL, DISTRICT ATTORNEY, EX REL. E. M. PORTER ET
AL. v. C. C. SWINNEY, COUNTY SUPERINTENDENT.

1. SCHOOLS.  *Revoking teacher's license.  Examining board.  Acts 1886 and 1890.*

   Where, under § 54, ch. 24, laws 1886, p. 51, as amended by § 8, ch. 71,
   laws 1890, p. 83, an applicant for a teacher's license was examined
   before the board of examiners, and the county superintendent
   graded his papers, marking his estimate of the answers on each
   subject separately, and, the general average being over ninety per
   cent., issued him a license good for three years, under which he
   taught, the successor of the superintendent cannot afterwards re-
   grade the papers, and reduce the license to two years, on the
   ground that the two examiners, other than the superintendent,
   never, in fact, examined the papers or signed the license.

2. SAME.  *Teacher's license.  Unauthorized revocation.*

   The right of the teacher, under the three years' license thus issued,
   is not affected by the fact that, finding his license thus challenged,
   he requested a re-examination of his papers, and that a member
   of the examining board, at the instance of the teacher and super-
   intendent, re-examined and regraded the papers, reducing his
   license to two years.

3. TEACHER'S LICENSE.  *Prima facie validity.  Compensation to teacher.*

   A teacher and his assistants are entitled to their compensation for
   services rendered in good faith under a license *prima facie* correct,
   notwithstanding irregularities on the part of the superintendent
   in marking his examination papers.

FROM the circuit court of Holmes county.

HON. C. H. CAMPBELL, Judge.

This is an action of mandamus on the relation of E. M.
Porter, M. M. Porter, S. A. Porter, and Nannie J. Patterson
against C. C. Swinney, county superintendent of education for
Holmes county, to compel defendant to recognize as valid a
three years' license of the relator, E. M. Porter, as a teacher
of the public schools, and to issue to him and to the other re-

lators, who are his assistant teachers, certificates for their salaries.

The petition alleges that in 1892 G. T. Hamilton was superintendent of education for Holmes county, and that in October of that year there was held an examination of all colored persons applying for license to teach in the public schools of said county; that among the applicants was relator, E. M. Porter, who, for two years preceding, had been teaching under a first-grade license; that the examination was conducted by Hamilton, the superintendent, and C. C. Swinney and C. S. Drake, who together constituted the board of examiners; that the examination papers of said Porter were duly examined and marked, the average being fixed at more than ninety per cent., which, under the law, entitled him to a license to teach for three years; that soon afterwards a three years' license, properly signed by Hamilton as superintendent, was made out and delivered; that Porter taught for some time under said license, which was recognized by Hamilton and his successor as valid; that Hamilton went out of office and was succeeded by said Swinney, who caused many of the teachers in the county to bring in their licenses for examination and revision; that Swinney called Porter's attention to the fact that his license was not signed by the examiners, but only by the superintendent; that Porter, while not believing the signature of all the examiners necessary, at the instance of Swinney, submitted his license to the other examiner, Drake, who, it was agreed, should regrade the original examination papers; that Drake, after making some alterations in the several branches of study, footed up the original average of Porter at eighty-nine and four-fifths per cent.; that, in consequence of this reduction of the general average below ninety per cent., Swinney, the superintendent, changed the period which the license had to run from three to two years; that Porter was of right entitled to a general average of more than ninety per cent. on both gradings, and was therefore entitled to have his license remain unaltered;

that, in the fall of 1893, Porter was duly, chosen principal of the colored public school in the separate school district of Durant, where he had previously taught, and commenced teaching, together with his associates, making regular monthly reports to the county superintendent, which were approved; that Swinney, however, refused to issue any pay certificates for his salary, which had been fixed by the trustees at $40 per month, and also refused to issue any pay certificates for the salaries of the assistant teachers.

The answer of Swinney to the petition denied that he had ever examined the papers of Porter, until after his induction into the office of superintendent; averred that Porter then presented his license signed only by Hamilton, the former superintendent, entitling him to teach for three years; that he examined the stub book of his predecessor, and found that Porter's license had not been entered as required, and he informed Porter of the fact; that Porter thereupon asked appellee to examine and grade his papers, and that appellee, with the consent of Porter, got Drake to do this; that Drake did make the examination, and reported to appellee that Porter's general average was 89⅖ per cent.; that Porter was satisfied therewith, and consented to stand another examination at the end of two years, if his license was recognized for that period; that upon that assurance the license was recognized and entered on the book; that, at the expiration of said time, Porter was cited to be re-examined, but declined to do so, claiming that his license entitled him to teach for three years; that at the expiration of two years appellee considered that the license had expired, and thereafter declined to issue pay certificates to Porter, and, for the reason that tne principal's license had expired, refused also to recognize the claim of the assistants for compensation.

The case was tried before the circuit judge, in vacation, and judgment was rendered in favor of defendant, denying relator's claim to compensation after the expiration of the two years. From this judgment they appeal.

*E. F. Noel*, for appellant.

There is no word in the then existing law that required the license to be signed by any examiner, nor was there anything on the license itself indicating that it was to be so signed. It was issued as all other licenses, and, if it was valid for any period, that period was three instead of two years. The true meaning of the act of 1886, as amended by that of 1890, is that the board should first pass on the examination papers to review and grade them, and that afterwards, in the light of information and counsel thus given, the superintendent should examine and grade the papers and mark his own estimates thereon. This construction harmonizes all the provisions, and allows the whole section to stand as amended. It makes the powers of the board purely advisory.

Appellant did all that the law required of him. The general average of his paper, exceeding 90 per cent., entitled him to a three years' license, which he obtained. The action of Drake in making alterations and regrading the paper was illegal, and the license stands just as if the changes had never been made. Such quibbling as was indulged in, in this case, to prevent appellant's obtaining the benefit of his examination, should not receive the sanction of the court.

*W. P. Tackett*, for appellee.

The license upon which relator relies was not legal. The superintendent, Hamilton, issued it without complying with the law, as set forth in § 4016, code 1892. See, also, laws 1886, ch. 54, p. 51. It is required that a majority of the examining board shall, as a board, and not individually, review and grade papers. It was the duty of the superintendent to contract with licensed teachers, but the licenses had to be obtained as prescribed in said section. He cannot individually grade papers and grant licenses. Even after Drake had reduced the average, the license was not legal, since Drake acted individually and without the co-examiners. Conceding the

original license valid, it was clearly in the power of the relator to make a subsequent agreement with the superintendent, or his successor, whereby the terms of the former agreement should be altered. The evidence shows this was done.

The issuance of the writ of mandamus is clearly within the discretion of the court, which will be governed by what seems to be necessary and proper to be done for the purpose of justice. 14 Am. & Eng. Enc. L., 97.

Appellee entered into office, and found no record of relator's license, and it was his duty to inquire as to his authority to teach. The license, being invalid, appellee could have revoked it, and relator cannot complain that, by agreement, he was permitted to accept the change in the license.

Argued orally by *E. F. Noel*, for appellant.

WOODS, J., delivered the opinion of the court.

There is no pretense that E. M. Porter did not appear before the examining board as a body on October 15 and 16, 1891, and stand the prescribed examination. It is not disputed, further, that the county superintendent examined and graded the papers and marked his estimate of the answers on the papers for each subject, and it is admitted, and shown, too, on the face of the record, that, according to this marking, grading and estimate, this applicant for license to teach made a general average of more than ninety per cent., and that a license to that effect was accordingly issued to the applicant, authorizing him to teach for three years.

The bungling amendment of section 54, chapter 24, laws of 1886, by section 8, chapter 71, laws of 1890, requires the action of the board of examiners to be that of the body, and not of the individual members of the board; but, as amended, the statute still requires the county superintendent to examine and grade the papers and mark his estimate of the answers on the papers for each subject. The meaning must be, if we are to

give effect to every part of the statute as amended, that the examiners, as a body, shall review and grade the examination papers, and that the county superintendent, in pursuance of that review and grading mark, shall write, the result of such review and grading on the papers. This is the only interpretation which will harmonize the amending section with the section sought to be amended.

The wholly unwarranted action of Drake, one of the original examining board before which Porter appeared in October, 1891, does not in the slightest degree affect the rights of Porter. Drake, at the time when he mistakenly assumed to regrade the former examination papers and change the license long before issued to Porter, was without authority or power to act at all in the premises, and it is immaterial what he exacted or Porter conceded as a condition to the latter's continuing to teach at all.

On the face of Porter's examination papers, as they then and yet appear, his general average was over ninety per cent., and he then received and yet has a proper license to teach for three years from its date.

The fact that no memorandum of Porter's license was made upon the stub in the book kept by the county superintendent is of as little moment as the subsequent mistaken and unauthorized action of the former examiner, Drake.

If there were irregularities in the mere marking of the examination papers by the county superintendent, for which the applicant was not responsible, he should not, nor should the assistant teachers under him, be denied their compensation for services faithfully rendered under the authority of a license *prima facie* correct.

*Reversed and remanded.*